**REALTY WORLD LABRUM, Plaintiff and Respondent,**

v.

**David G. STEADMAN and Lynae Steadman, Defendants and Appellants.**

**No. 19620.**

Supreme Court of Utah.

March 31, 1987.

Stott P. Harston, Provo, for defendants-appellants.

George E. Mangan, Machelle Fitzgerald, Roosevelt, for plaintiff-respondent.

DURHAM, Justice:

Defendants David G. and Lynae Steadman appeal from a judgment holding them liable to plaintiff Realty World under a real estate sales agency contract. We affirm.

Defendants owned a home in Roosevelt, Utah, where Mr. Steadman was principal of Union High School. Mr. Steadman holds a doctorate in education and is experienced in real estate transactions; he has successfully completed a real estate course and has passed the test given by the state to persons applying for real estate licenses. In the spring of 1980, defendants obtained employment in Idaho and decided to sell their home in Roosevelt. Before they listed the home, defendants showed it to the Percivals, with whom they were acquainted.

On June 20, 1981, defendants entered into an exclusive sales agency agreement with Strout Realty. That agreement expired on September 1, 1981. On September 2, 1981, defendants entered into an exclusive agreement with Realty World; that agreement did not relieve defendants of the duty to pay a commission if the home was sold to the Percivals. While the home was listed with plaintiff, plaintiff showed it to the Percivals and submitted an $80,000 offer on their behalf. Defendants rejected the offer. At the expiration of the agreement with Realty World, defendants entered into another agreement with Strout Realty, their original broker. That agreement was dated November 2, 1981. Defendants drafted a handwritten clause specifically excluding the Percivals from that agreement.

Eight days after they entered the second agreement with Strout Realty, defendants sold their home to the Percivals for $83,000. Realty World sued to enforce the protection period clause of its sales contract with defendants. The protection period clause reads:

Should said property be sold, leased or exchanged within 3 months after such expiration to any party to whom the property was offered or shown by [homeowner] or [agent], or any other party during the terms of this listing, [homeowner] agree[s] to pay [agent] the commission above stated; provided [homeowner has] received notice in writing, including the names of prospective purchasers before or upon termination of this agreement or extension thereof. However, [homeowner] shall not be obligated to pay such compensation if a valid listing agreement is entered into during the term of said protection period with another licensed real estate broker and a sale, lease or exchange of the property is made during the term of said protection period.

The trial court held defendants liable under the protection period clause, ruling in effect that no "valid" listing agreement had been entered into during the protection period.

■ Defendants' interpretation of the language of the final sentence is that they are absolved of liability for a commission if *any* listing agreement is entered into during the term of the protection period, even one designed, as this one was, to exclude sales to any persons who saw the house during the original listing. Defendants' position is at odds with the purpose of the protection period clause. We agree with the trial court that the protection period clause was fashioned to relieve homeowners who list their property with a new agent at the expiration of an earlier listing agreement from the burden of paying commissions to both the original and the new brokers. The language of the sales agreement is not as clear as it might be; it should say that the homeowner is excused from paying a commission on a sale to a buyer whose name was provided during the period of the sales agency contract only if the home is sold to that buyer under an agency agreement with another agent that obligates the homeowner to pay a commission. Although the drafting is poor, it was proper for the trial court to interpret the language of the protection period clause to give effect to its obvious intent and pur-

pose. *Nagle v. Club Fontainbleu,* 17 Utah 2d 125, 128, 405 P.2d 346, 348 (1965). The protection period clause was clearly not intended to afford relief to a homeowner who allows a realtor to find willing buyers, waits until the expiration of the realtor's listing agreement, and then sells privately to the same buyers.

■ The protection period clause requires the homeowner to enter into a "valid" listing agreement before he is excused from payment of the commission. The trial court, after hearing and observing the witnesses at trial, determined that the second listing agreement entered by defendants and Strout Realty was a sham intended to deprive Realty World of the commission owed by defendants. We will not disturb the trial court's findings of fact unless those findings are clearly erroneous. Utah R.Civ.P. 52(a). This is not such a case. The short period of time between the date of the expiration of the listing agreement and the sale of the home to the Percivals, the amount of the Percivals' first offer and the eventual sales price, Mr. Steadman's real estate background, and the prior relationship between defendants and Strout Realty all support the trial court's conclusion that the second listing was not valid.

■ Defendants also claim that their constitutional and statutory rights to trial by jury were violated because, although they requested a jury, the matter was inadvertently scheduled as a bench trial. That assertion is unsupported by the record, which shows that the trial court explained the docketing error to defendants and offered them a continuance so that a jury panel could be obtained. Defendants, individually and through counsel, knowingly waived their right to a jury trial.

Affirmed. Costs to respondents.

HALL, C.J., and HOWE and ZIMMERMAN, JJ., concur.

STEWART, Associate C.J., concurs in the result.